UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS JABORO and
SHAMS JABORO,

    Plaintiffs,

v.                                              Case No. 10-11686
                                               Honorable Patrick J. Duggan

WELLS FARGO BANK, N.A., and
BAC HOME LOAN SERVICING, LP,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 20, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

This action arises from a mortgage loan for approximately $750,000, which Plaintiff Dennis Jaboro ("Mr. Jaboro") obtained to refinance property located at 24936 Hadlock Drive, Novi, Michigan ("Property"). Mr. Jaboro subsequently defaulted on the loan and foreclosure proceedings were instituted. On March 29, 2010, allegedly one day before a Sheriff's Sale was scheduled to occur, Mr. Jaboro and his wife, Shams Jaboro ("Plaintiffs"), initiated this action in the Circuit Court for Oakland County, Michigan, alleging the following "counts": (I) Request for a Temporary Injunction for State Law Claims; (II) Violation of Michigan's Foreclosure by Advertisement Statute, Michigan Compiled Laws § 600.312; (III) Declaratory Relief that the Named Defendants are not Holders of the Mortgage Note and Therefore the Debt and Mortgage is [sic] Null and

Void; (IV) Quiet Title Relief as to Defendants; (V) Civil Conspiracy; (VI) Fraudulent Misrepresentation; (VII) Fraudulent Conversion; (VIII) Promissory Estoppel; and (IX) Breach of Contract. Defendants removed Plaintiff's Complaint to this Court on April 26, 2010.

Presently before the Court is Defendants' motion for summary judgment filed on October 15, 2010. The motion has been fully briefed and, on December 2, 2010, the Court held a motion hearing. For the reasons that follow, the Court grants the motion and dismisses Plaintiff's Complaint with prejudice.

## I. Standard for Summary Judgment

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the

"nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II. Factual Background

On February 22, 2007, Plaintiffs refinanced the Property by having Plaintiff Dennis Jaboro ("Mr. Jaboro") execute a promissory note in favor of Wells Fargo Bank, N.A. ("Wells Fargo") evidencing a loan in the amount of $748,000 ("Note"). (Defs.' Mot. Ex. 2.) As security for repayment, Plaintiffs executed a Mortgage encumbering the Property in favor of Wells Fargo and its successors and assigns. (*Id*. Ex. 3.)

In connection with the loan, Mr. Jaboro promised that the information contained in his loan application, and the statement of assets and liability attached to the loan application, were true and accurate. (Defs.' Mot. Ex. 4 at 3 & 4.) Plaintiffs reaffirmed this promise in the Mortgage. (*Id*. Ex. 3 ¶ 14.) Plaintiffs also promised that they understood, and would repay, all costs and fees associated with the origination and repayment of the loan. (*Id*. Ex. 5.) Plaintiffs acknowledged receipt of the Truth-in-Lending Disclosure Statement, wherein they were advised of the annual percentage rate,

3

finance charge, amount of money financed, and total payments to be made under the Note. (*Id*. Ex. 6.) Mr. Jaboro also acknowledged that he was advised of any fees that would be paid to any mortgage broker in connection with the origination of the Loan and Mortgage and that he understood the loan servicer could change during the life of the loan. (*Id*. Exs. 7, 8.)

In May 2007, Plaintiffs defaulted under the Note and Mortgage by failing to make payments as and when due. Wells Fargo sent Plaintiffs a letter dated May 14, 2007, requesting that they cure their payment default by bringing the loan current by June 13, 2009. (Defs.' Mot. Ex. 9.) Plaintiffs failed to cure their payment default and, on July 16, 2007, Wells Fargo sent Plaintiffs another letter, indicating that if they did not fully cure their payment default by August 15, 2007, the Maturity Date under the Note would be accelerated and all sums owed thereunder would become immediately due and payable and the Mortgage may be foreclosed. (*Id*. Ex. 10.) Following the July 16, 2007 letter, Plaintiffs made some payments under the Note but never brought the Loan current or cured their payment defaults. Wells Fargo sent Plaintiffs additional letters, dated October 15, 2007 and August 17 and November 9, 2008, again advising that the failure to cure the default would result in acceleration of the Maturity Date of the Note and potential foreclosure of the Mortgage. (*Id*. Ex. 11.)

On January 8, 2009, Trott & Trott, as representative of Wells Fargo, informed Plaintiffs that Wells Fargo was accelerating the Maturity Date of the Note and demanding payment of all sums due thereunder, totaling $789,826.40. (*Id*. Ex. 12.) Trott & Trott

4

further indicated that Wells Fargo had instructed Trott & Trott to initiate foreclosure proceedings against the Property. (*Id.*) Four days later, on January 12, 2009, Wells Fargo assigned the Mortgage to Bank of America, National Association ("Bank of America"). (*Id.* Ex. 13.)

Over a four week period in January and February 2009, a Notice of Foreclosure with respect to the Property was published and, on January 16, 2009, was posted at the Property. (Defs.' Mot. Exs. 14, 20.) The Notice of Foreclosure stated that a Sheriff's Sale was scheduled to occur on February 10, 2009. A Sheriff's Sale eventually took place on June 8, 2010, where Bank of America was the highest bidder. (*Id.* Ex. 14.) On the same date, a Sheriff's Deed was executed in favor of Bank of America. (*Id.*) The redemption period expired on December 8, 2010.

After the Sheriff's Sale, specifically on June 16, 2009, Wells Fargo received an "Official Qualified Written Request" ("QWR") from the "Loan Compliance Advisory Group" ("LCAG") allegedly acting on behalf of Mr. Jaboro. (Defs.' Mot. Ex. 15.) In the document, LCAG accuses Wells Fargo of having engaged in "deceptive lending practices" in connection with Plaintiffs' loan and requests various information related to the loan. (*Id.*)

Wells Fargo responded directly to Mr. Jaboro in a letter dated July 21, 2009, indicating that "Wells Fargo has chosen not to work with LCAG" and therefore is responding to Mr. Jaboro directly. (*Id.* Ex. 16.) Wells Fargo then indicates that a QWR provides a method for borrowers to dispute and challenge a specific error with the

5

servicing of their loans, but LCAG's letter fails to reference a dispute with the servicing of Mr. Jaboro's loan. (*Id*.) Wells Fargo advises Mr. Jaboro that, if he has a specific dispute with the servicing of his loan, he should contact Well Fargo. (*Id*.) Indicating that LCAG's letter suggests that Mr. Jaboro is looking for financial assistance with respect to his loan, Wells Fargo further informs Mr. Jaboro that he should contact Wells Fargo to inquire about its modification program or other financial assistance available to help him keep his home. (*Id*.)

On September 8, 2009, Wells Fargo received a second "QWR" from LCAG. (Defs.' Mot. Ex. 17.) On October 19, 2009, Wells Fargo wrote LCAG indicating that Wells Fargo needed written verification from Mr. Jaboro that LCAG was authorized to represent him and that Wells Fargo refused to work with LCAG and therefore would direct its responses to any inquiries directly to the mortgagor. (*Id*. Ex. 18.) Wells Fargo wrote directly to Mr. Jaboro on November 10, 2009, indicating that Wells Fargo received LCAG's second request, that it did not constitute a "QWR," that Mr. Jaboro should contact Wells Fargo if he has a specific dispute regarding the servicing of his loan, and that Wells Fargo had contacted Mr. Jaboro seeking to obtain updated financial information necessary to offer financial assistance without success. (*Id*. Ex. 19.)

## III. Applicable Law and Analysis

### A. Request for Temporary Injunction for State Law Claims (Count I)

In Count I of their Complaint, Plaintiffs seek an injunction barring Defendants from conducting a foreclosure sale with respect to the Property. Putting aside the fact that

Plaintiffs do not state a cause of action in this count but only seek a form of relief, their request for relief is moot. A Sheriff's Sale already occurred with respect to the Property on June 8, 2010.

> B. **Violation of Michigan's Foreclosure by Advertisement Statute (Count II)**

Plaintiffs allege in their Complaint that Wells Fargo never complied with the notice of foreclosure requirements set forth in Michigan Compiled Laws Section 600.3212, specifically that notice be posted at the residence. Plaintiffs therefore ask the Court to set aside the Sheriff's Deed. However, according to the Affidavit of Posting attached to the Sheriff's Deed, notice was posted at the Property on January 16, 2009. (Defs.' Mot. Ex. 14.) "The party contending the posting is insufficient has the burden of proof." *Cox v. Townsend*, 90 Mich. App. 12, 15, 282 N.W.2d 223, 225 (1979) (citing *White v. Burkhardt*, 338 Mich. 235, 60 N.W.2d 925 (1953)). Plaintiffs present no evidence to satisfy their burden of proof.

In response to Defendants' motion, Plaintiffs additionally argue that the Sheriff's Deed should be set aside because Well Fargo failed to verify the income Mr. Jaboro claimed in the loan application. For some reason, Plaintiffs repeatedly cite to a Maine statute for authority as to what documents Wells Fargo should have considered to verify Mr. Jaboro's income. Plaintiffs appear to argue that if Wells Fargo had reviewed this documentation it could not have reasonably relied on Mr. Jaboro's income as represented in the loan application.

7

First, Maine law is irrelevant in this case. Second, Plaintiffs do not dispute that Mr. Jaboro acknowledged and agreed under penalty of perjury that the representations on the loan application were true and that Wells Fargo could rely upon them when deciding whether to extend the loan.[1] As several courts in this District have held, including this Court, "it is inconceivable that an individual can represent to a lender that he is earning [$25,000] a month when applying for a loan, obtain the loan from the lender, and then sue the lender because the applicant in fact had no income." *Saleh v. Home Loan Services, Inc.*, No. 09-10033, 2009 WL 2496682, at *2 (E.D. Mich. Aug. 17, 2009); *see also, e.g. Battah v. ResMAE Mortgage Corp.*, – F. Supp. 2d – , 2010 WL 4260530, at *4 (E.D. Mich. Oct. 28, 2010) (". . . it is absurd for a person to sue for fraud based on inflated statements regarding his own income on a loan application.") It is similarly inconceivable that a plaintiff could use such an argument to set aside the foreclosure sale of the Property.

Although not asserted specifically in their Complaint or response brief, Plaintiff's counsel argued at the motion hearing that Defendants also violated Michigan Compiled

---

[1] At the motion hearing, Plaintiff's counsel suggested that the lender's representative prepared the loan application and stated Mr. Jaboro's monthly income to be $25,000, while Mr. Jaboro in fact reported that his income was far less. This conflicts with Plaintiffs' counsel's argument that Defendants violated their duties by failing to verify the income claimed by Mr. Jaboro. *See supra*. In fact, Plaintiff's counsel made it clear that he actually does not know who completed the loan application and what income level was provided by Mr. Jaboro. In any event, regardless of who provided the information for the application, Mr. Jaboro signed the application and verified that the $25,000 monthly income stated on the application was correct.

Law Section 600.3220 because there was no newspaper publication when the Sheriff's Sale was adjourned from February 10, 2009 to June 16, 2009. Plaintiff's failure to raise this issue earlier deprived Defendants of the opportunity to properly address it. Nevertheless, the Court finds that any violation of Section 3220 does not justify the relief Plaintiffs' seek in this count.

> With respect to adjournments of a foreclosure sale, Section 600.3220 provides:
>
> Such sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published, the first publication to be within 10 days of the date from which the sale was adjourned and thereafter once in each full secular week during the time for which such sale shall be adjourned. No oral announcement of any adjournment shall be necessary.

Mich. Comp. Laws § 600.3220. Under this section, a party who publishes an initial notice of foreclosure and sheriff's sale may continue to adjourn the sale from week to week without having to republish notice of the adjournment in a newspaper. It is only when there is an adjournment of more than a week that re-publication in a newspaper is required.

Plaintiffs present no evidence to show that the Sheriff's Sale with respect to the property was adjourned by more than one week at any time. Because Plaintiffs only raised this argument at the motion hearing, Defendants' counsel has not informed the Court of the length of the adjournment(s) and was not prepared to do so at the hearing.

9

However, even if re-publication in a newspaper was required to adjourn the Sheriff's Sale with respect to the property and Defendants therefore failed to comply with the requirements of Section 600.3220, the Court concludes that this defect is insufficient to invalidate the mortgage sale.

Michigan courts have "held that 'a defect in notice renders a foreclosure sale voidable,' not void." *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 502, 739 N.W.2d 656, 662 (2007) (quoting *Jackson Inv. Corp. v. Pittsfield Prod., Inc.*, 162 Mich. App. 750, 755, 413 N.W.2d 99 (1987)). Courts have declined to void a foreclosure sale where no harm was caused by the defect. *Id.*; *see also Worthy v. World Wide Fin. Serv., Inc.*, 347 F. Supp. 2d 502, 511 (E.D. Mich. 2004), *aff'd* 192 F. App'x 369 (6th Cir. 2006). As the Michigan Court of Appeals reasoned in *Jackson Investment Corporation*:

> "In situations where it is evident that no harm was suffered, in that the mortgagor would have been in no better position had notice been fully proper and that the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property, we see little merit in the rule of law the mortgagor advocates" [i.e. setting aside the foreclosure sale due to a defect in § 600.3220's requirements].

*Worthy*, 347 F. Supp. 2d at 511 (quoting *Jackson Inv. Corp.*, 162 Mich. App. at 755-56, 413 N.W.2d 99).

In *Kenney*, the court set forth the following reasons for finding no prejudice and therefore holding that the foreclosure sale should not be set aside:

> Defendants were not timely in challenging the validity of the foreclosure sale, and they made no effort to redeem or take any action until well after the redemption period had run. Defendants waited until plaintiff instituted proceedings to evict them before they took any action to challenge the

10

foreclosure sale.

275 Mich. App. 492, 503, 739 N.W.2d at 662. Similarly, in *Worthy*, Judge Feikens found no prejudice because the plaintiff let several months pass after the foreclosure sale before filing a complaint and never tendered any money to redeem the property. 347 F. Supp. 2d at 511.

Unlike the plaintiffs in *Worthy* and *Kenney*, Plaintiffs did not wait until after the foreclosure sale to file their Complaint. Plaintiffs filed their Complaint on March 29, 2010. According to the allegations in the Complaint, at that time the Sheriff's Sale already had been adjourned to March 30, 2010. (Compl. ¶ 16.) This distinction, however, does not cause this Court to find that harm was suffered by the alleged defect. To the contrary, it tells the Court that Plaintiffs had notice of the foreclosure proceedings and some delay in the foreclosure sale and therefore "lost no potential opportunity to preserve some or any portion of [their] interest in the property . . . ." *Jackson Inv. Corp., supra*. Further, like the plaintiffs in *Worthy* and *Kenney*, during the redemption period Plaintiffs never tendered any money to redeem the property and they have never stated their interest in doing so.

The Court therefore finds no grounds to invalidate or set aside the foreclosure sale.

**C.     Declaratory Relief that the Named Defendants Are Not Holders of the Mortgage Note and Therefore the Debt and Mortgage are Null and Void (Count III)**

Citing Michigan Compiled Laws Section 440.3205, Plaintiffs seek a declaratory judgment that Defendants are not the owners of the Mortgage Note and therefore they did

not have the right to foreclose and sell the Property at a Sheriff's Sale. Section 3205 is part of Michigan's Uniform Commercial Code addressing negotiable instruments. As this Court held in another foreclosure related case, this section of the UCC is inapplicable to a mortgage which is not a negotiable instrument. *See Howze v. New Century Mortgage Corp.*, No. 08-13458, 2008 WL 5110521, at *1 n. 1 (E.D. Mich. Dec, 2, 2008) (citing *Mox v. Jordan*, 186 Mich. App. 42, 46, 463 N.W.2d 114, 115 (1990)); *Hilmon v. Mortgage Electronic Registration Systems, Inc.*, No. 06-13055, 2007 WL 1218718, at *3 (E.D. Mich. Apr. 23, 2007) (finding that nothing in Michigan's foreclosure statute requires a named mortgagee to be a holder in due course of the note). In any event, Plaintiffs fail to allege a basis for finding that Wells Fargo did not hold an interest in the Note.

### D. Quiet Title (Count IV)

In Count IV of their Complaint, Plaintiffs contend that Defendants' claim of a right to foreclose under Michigan's Foreclosure Statute is invalid because: (a) Defendants are not holders of the original Mortgage Note; (b) under the statute, Defendants cannot enforce a security agreement not supported by a debt instrument in their possession; (c) the statute's notice requirements were violated; (d) Defendants engaged in fraudulent activity in closing the mortgage with excessive interest rate charges and other costs; and (e) Wells Fargo and its agents, assigns, and originators conspired in creating a false mortgage loan application and fraudulent closing charges; and the foreclosure action was brought under fraudulent representations. (Pls.' Compl. ¶ 29.) Plaintiffs ask the Court to

declare the Mortgage illegal and void and to therefore further declare that Defendants lacked standing to foreclose and that Plaintiffs hold all right, title, interest in the Property.

Plaintiff's assertions are undermined by the evidence presented by Defendants in support of their motion for summary judgment. This evidence establishes that, in connection with the loan, Mr. Jaboro executed a Note in favor of Wells Fargo and Plaintiffs executed a Mortgage encumbering the Property in favor of Wells Fargo and its successors and assigns. Plaintiffs swore that the information contained in the mortgage application was accurate and they fail to identify with any specificity any fraudulent charges or costs. Wells Fargo assigned the Mortgage to Bank of America. Wells Fargo continued to service the Note and Mortgage. Plaintiffs' subsequent default provided a basis under the terms of the Note and Mortgage to foreclose on the Property. Pursuant to Michigan's Foreclosure Statute, "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage" may foreclosure the mortgage. Mich. Comp. Laws § 600.3204(1)(d).

In short, Plaintiffs fail to allege a basis for quieting title to the Property in their names.

### E.  Civil Conspiracy (Count V)

Plaintiffs allege that Defendants engaged in a civil conspiracy by using the United States Mail to foreclose on the Property "through the use of [c]onversion and [f]raud." (Compl. ¶ 31.) Plaintiffs further allege in this count that Defendants overcharged Plaintiffs' account with various fees, resulting in a foreclosure "on an amount that was

13

not due and owing . . ." (*Id.*)

Plaintiffs fail to allege any facts supporting a conspiracy between Defendants. Plaintiffs also fail to come forward with evidence to support their assertion that Defendants charged them fees or costs that they did not expressly agree to repay. (*See* Compl. ¶ 3.) Therefore, as Defendants correctly point out, Plaintiffs "allegations offer nothing more than 'labels and conclusions.'" (Defs.' Br. in Supp. of Mot. at 13.) In response to Defendants' motion, Plaintiffs indicate that their civil conspiracy claim is premised on Wells Fargo's failure to confirm Mr. Jaboro's income which they allege amounted to fraud. As addressed earlier and again below, this does not constitute fraud. Under Michigan law, a civil conspiracy claim is not cognizable without a cognizable underlying tort and Plaintiffs fail to plead a cognizable tort. *Battah*, 2010 WL 4260530, at *5 (*citing Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 104 Mich. App. 300, 486 N.W.2d 351, 358-59 (1992)). As such, Plaintiffs fail to establish an underlying tort to support their civil conspiracy claim.

F. **Fraudulent Misrepresentation (Count VI) and Conversion (Count VII)**

In Count VI of their Complaint, Plaintiffs allege that Defendants intentionally made false and material representations concerning excessive charges, interest rates, and escrow amounts and inflated various figures on the original loan application. (Compl. ¶¶ 37, 38.) Plaintiffs also claim that they were never informed of various information at the closing, including "the nature of the variable rate loan." (Compl. ¶ 39.) In Count VII of their Complaint, Plaintiffs allege that Defendants' misconduct resulted in the

14

foreclosure of their home which constituted an unlawful conversion of their property. (Compl. ¶¶ 47-49.) Defendants assert several grounds for why Plaintiffs' tort claims fail.

While the Court finds that Defendants are entitled to summary judgment based on most, if not all, of their arguments, the Court only will address a few. As to Plaintiffs' conversion claim, under Michigan law the tort applies to *personal* not real property.[2] *See Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438, 104 N.W.2d 360, 362 (1960) (citing Nelson & Witt v. Texas Co., 256 Mich. 65, 239 N.W. 289, 291 (1931) ("Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein")); *Kama v. Wells Fargo Bank*, No. 10-10514, 2010 WL 4386974, at *3 (E.D. Mich. Oct. 29, 2010) (holding that "conversion applies only to personal property, not to real property"). With respect to Plaintiffs' fraud claim, Plaintiffs fail to plead facts with sufficient particularity to support their claim and they fail to provide evidentiary support for their claim in response to Defendants' motion.[3]

Moreover, most of the allegations set forth to support Plaintiffs' fraud claim relate

---

[2]Additionally, in their Complaint, Plaintiffs only allege that Defendants "attempted" to convert their property. (Compl. ¶ 48.)

[3]Notably in Plaintiffs' fraud claim, Plaintiffs' counsel uses the exact language to describe Defendants' alleged misconduct that he has used in numerous other actions filed in this District on behalf of homeowners facing foreclosure proceedings. *See, e.g., Battah v. ResMAE Mortgage Corp.*, – F. Supp. 2d –, 2010 WL 4260530, at *4 (E.D. Mich. 2010); Pl.'s Compl. at ¶¶ 26-28 *Mekani v. Homecomings Fin. LLC*, No. 10-10992 (filed Mar. 11, 2010). At least one allegation– failing to advise Plaintiffs "of the nature of the variable rate loan"– is not even applicable to Plaintiffs' fixed rate loan.

15

to the origination of the Note and Mortgage, which occurred on February 22, 2007. As Plaintiffs did not file their Complaint until March 29, 2010, their fraud claim is time-barred pursuant to Michigan Compiled Laws Section 600.5805(10). While Plaintiffs refer to equitable tolling in response to Defendants' motion, they fail to explain how the allegedly fraudulent statements were concealed from them when they signed the Note and/or Mortgage documents. Plaintiffs also state that "the fraud is still being perpetrated and was discovered shortly before the filing of this suit" (Pls.' Resp. Br. at 11); however, this statement lacks any support and appears to be nonsense.

### G. Promissory Estoppel (Count VIII)

A claim of promissory estoppel under Michigan law requires proof of the following:

> "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided."

*Battah*, 2010 WL 4260530, at *5 (quoting *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 687, 599 N.W.2d 546 (1999)). In their promissory estoppel claim, Plaintiffs allege that Defendants made some unidentified promise "to induce [Mr. Jaboro] into a mortgage that he believed he could afford and induced Plaintiff into falsely believing his sale by advertisement would not occur while negotiations were taking place." (Compl. ¶ 51.) Presumably, Plaintiffs are referring to the representations regarding Mr. Jaboro's income, assets, expenses, and liabilities on the loan application which they claim

16

suggested that they could afford the loan and "assurances that the Defendants were holding the foreclosure in abeyance pending the outcome of [some unidentified] investigation." (*See* Compl. ¶¶ 6, 7, 10.)

As to the first, it is absurd for Plaintiffs to blame the financial picture presented on their loan application for their entering into a loan that they now claim they could not afford. Mr. Jaboro verified under penalty of perjury that the statements on the application were correct and Plaintiffs, or at least Mr. Jaboro who agreed to the loan, were in the best position to know Mr. Jaboro's actual income, assets, expenses, and liabilities.

Plaintiffs also cannot state a promissory estoppel claim based on any purported statements by Defendants to hold the foreclosure in abeyance. First, Plaintiffs fail to make any well-pleaded factual allegations or present any evidence in response to Defendants' motion to support their claim that such a promise ever was made by Defendants. Wells Fargo's responses to Plaintiffs' purported QWRs in no way promise an abeyance of the foreclosure proceedings. Instead, the correspondence simply informs Plaintiffs that Wells Fargo has programs to assist homeowners and that Plaintiffs must contact Wells Fargo if they are seeking financial assistance. As the November 2009 letter from Wells Fargo indicates, however, Plaintiffs failed to respond to the company's request for information to determine their eligibility for financial assistance and therefore the company closed the file.

For these reasons, Defendants are entitled to summary judgment with respect to Plaintiffs' promissory estoppel claim.

17

### H. Breach of Contract (IX)

Plaintiffs' breach of contract claim contains two brief paragraphs:

58. Plaintiff adopts by reference the preceding paragraphs.

59. Plaintiffs are being illegally subjected to this foreclosure action by being forced to defend the same and being charged illegal and predatory court costs and related fees and attorney fees along with having their credit slandered.

The allegations in Plaintiffs' Complaint fail to set forth how anything Defendants did breached a contract between the parties. In their response brief, Plaintiffs now assert that Defendants breached "the agreement" by failing to obtain a novation prior to assigning the mortgage to Bank of America. (Pl.'s Resp. Br. at 16.) Plaintiffs fail to identify the provisions or the contract on which they are relying and the Mortgage specifically allows for the sale of the Note or interest in the Note, including the Mortgage, without prior notice to the borrower. (Defs.' Mot. Ex. 3 ¶ 20.)

Plaintiffs therefore fail to state a viable breach of contract claim.

### IV. Conclusion

In this District, Plaintiffs' counsel has filed numerous complaints containing a multitude of frivolous claims on behalf of homeowners challenging indisputably legal foreclosures, such as the one in this case. Several of those cases already have been deemed frivolous. This case is no exception. While Plaintiffs' counsel presents multiple claims in support of Plaintiffs' requested relief, none of the claims state a cause of action on which relief may be granted and/or the claims are not supported in any way by the

facts presented.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is **GRANTED**.

              <u>s/PATRICK J. DUGGAN</u>
              UNITED STATES DISTRICT JUDGE

Copies to:
Ziyad Kased, Esq.
Matthew J. Boettcher, Esq.
Patrick C. Lannen, Esq.